UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TARA KANGARLOO, et al.,

    *Plaintiffs*,

v.

MIKE POMPEO,
Secretary, Department of State, et al.,

    *Defendants*.

Civil Action No. 1:20-cv-00354 (CJN)

## MEMORANDUM OPINION

    Plaintiff Ehsan Imanifouladi is one of thousands of visa applicants whose entry to the United States was barred under executive actions restricting immigration from Imanifouladi's home country of Iran.  *See generally* Pls.' Pet. for Mandamus and Compl. for Inj. & Declaratory Relief ("Pet."), ECF No. 1.  His request for a waiver of those restrictions has been pending for nearly two years.  *Id.* ¶ 5.  Imanifouladi and his relatives filed this case asking the Court to force the government to act on the waiver application, either by granting a writ of mandamus or by compelling government action under the Administrative Procedure Act (APA), 5 U.S.C. § 706(1).  *See generally id.*  The government moves to dismiss, arguing that the Court lacks subject-matter jurisdiction and that the Petition fails to state a claim.  *See generally* Defs.' Mot. to Dismiss, ECF No. 5.  Although the Court has jurisdiction, it dismisses the Petition.

    **I.**    **Background**

    Plaintiff Tara Kangarloo, a United States citizen residing in Virginia, married Imanifouladi in 2015 and shortly thereafter applied for an I-130 visa for her new husband.  Pet. ¶ 1.  Imanifouladi is an Iranian citizen living in Iran.  *Id.* ¶¶ 1, 5.  After going through several

1

steps in the visa-application process, Imanifouladi traveled to the U.S. Embassy in Ankara, Turkey, where he interviewed with a consular officer on June 22, 2016. *Id.* ¶ 1.  Immediately upon completion of the interview, the consular officer refused Imanifouladi's visa application under section 221(g) of the Immigration and Naturalization Act (INA), 8 U.S.C. § 1201(g), pending further administrative processing. *Id.*

While Imanifouladi was waiting for further word, the President promulgated a series of executive orders "impos[ing] entry restrictions on nationals of countries that do not share adequate information for an informed entry determination, or that otherwise present national security risks." *Trump v. Hawaii*, 138 S. Ct. 2392, 2403 (2018); *see also id.* at 2403–04 (describing the various executive actions implementing the visa restrictions).  As relevant here, the President issued Presidential Proclamation 9645 on September 24, 2017, "plac[ing] entry restrictions on the nationals of eight foreign states [including Iran] whose systems for managing and sharing information about their nationals the President deemed inadequate." *Id.* at 2404 (citing Presidential Proclamation No. 9645, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats ("Proclamation"), 82 Fed. Reg. 45,161 (Sep. 24, 2017)).  A federal district court in Hawaii enjoined the Proclamation's enforcement weeks after it was issued. *Hawaii v. Trump*, 265 F. Supp. 3d 1140, 1155–59 (D. Haw. 2017).

On November 6, 2017—more than a year after the first interview and a little over a month after the nationwide injunction went into effect—the Embassy contacted Imanifouladi to inform him that his application's processing was complete and that he was required to conduct a second interview on January 24, 2018. Pet. ¶ 3.  On December 4, 2017, however, the Supreme Court stayed the district court's injunction and permitted the Proclamation to go into effect.

*Trump v. Hawaii*, 138 S. Ct. 542 (2017). The Embassy cancelled Imanifouladi's pending interview and modified its reason for refusing the visa application from INA section 221(g), which authorizes refusal if the application does not conform to administrative requirements or if the government requires more information about the applicant, 8 U.S.C. § 1201(g), to INA section 212(f), which authorizes refusal under restrictions imposed by the President, 8 U.S.C. § 1182(f). Pet. ¶ 3; U.S. Embassy Ankara's Email of Jan. 6, 2020, ECF No. 1-7.

The Proclamation allows refused applicants to petition for a waiver. *See* Proclamation § 3(c). Kangarloo applied for a waiver on Imanifouladi's behalf on August 14, 2018, Pet. ¶ 5, and Imanifouladi completed the required paperwork on October 26, 2018, *id.* ¶ 6. Having not yet received a decision, Kangarloo, Imanifouladi, and members of their extended family filed this suit on February 7, 2020. *See generally* Pet. Plaintiffs ask the Court to compel the government to adjudicate the waiver application, arguing that the delay either violates the APA, *id.* ¶¶ 56–63, or warrants a writ of mandamus, *id.* ¶¶ 49–55.

The government, in turn, moves to dismiss. *See generally* Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("Mot."), ECF No. 5-1. It argues that the Court lacks subject-matter jurisdiction either because the consular officer's refusal of Imanifouladi's visa application is unreviewable, *id.* at 7–9, or that Plaintiffs' claims are moot, *id.* at 9–10. The government also contends that the waiver process is exempt from APA review, *id.* at 11–12, or that any delay has not been unreasonable under either the APA or the Mandamus Act, *id.* at 12–18.

## II. Legal Standards

### A. Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation omitted). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1),

Plaintiffs bear the burden of establishing the Court's subject-matter jurisdiction. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). When evaluating a motion to dismiss under Rule 12(b)(1), the court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine[s] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Without subject-matter jurisdiction over a claim, the Court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006).

### B.   Failure to State a Claim

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the Court accepts all well pleaded facts in the Amended Complaint as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations omitted). The claim to relief must be "plausible on its face," enough to "nudge[ the] claims across the line from conceivable to plausible." *Id.* at 570. The Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    Analysis

#### A. Consular Nonreviewability

After submitting the appropriate forms, a visa applicant must interview with a consular officer.  8 U.S.C. § 1202(h); 22 C.F.R. § 42.62.  During the interview, the applicant must swear to the accuracy of the information in his application.  22 C.F.R. § 42.67.  Immediately upon concluding the interview, "the consular officer must issue the visa, refuse the visa under INA [sections] 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA [section] 243(d), discontinue granting the visa."  22 C.F.R. § 42.81(a).  "The consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available."  *Id.* § 42.81(b).

But that refusal is not always final.  According to internal regulations, the "requirement to find an applicant ineligible when a visa is not issued applies even when . . . [a] case is medically deferred; . . . [t]he post requests an advisory opinion from the Department; . . . [t]he post decides to make additional local inquiries or conduct a full investigation; or . . . [t]he only deficiency is a clearance from another post."  9 Foreign Affairs Manual (FAM) § 504.1-3(i)(1).  The same regulation, however, stresses that "[t]here is no such thing as an informal refusal or a pending case once a formal application has been made."  *Id.*

This was initially the case for Imanifouladi.  The consular officer refused him a visa because the application needed further processing.  *See* Visa Denial Form of Jul. 1, 2016 ("Denial Form"), ECF No. 1-4.  That processing took more than a year to complete, and the Embassy then invited Imanifouladi to interview again.  *See* U.S. Embassy Ankara's Ltr. of Nov. 6, 2017, ECF No. 1-5.  When the Supreme Court permitted the Proclamation to go into effect, however, the consular officer modified the refusal—rather than basing the refusal on

5

administrative processing pursuant to 8 U.S.C. § 1201(g), the refusal was made under 8 U.S.C. § 1182(f), which permits consular officers to refuse visas pursuant to presidential immigration restrictions.  *See* U.S. Embassy Ankara's Email of Jan. 6, 2020 (citing the Proclamation).

The government argues that the refusal was final and is therefore subject to the consular nonreviewability doctrine.  *See* Mot. at 7–9.  Under that doctrine, courts may not review a consular officer's refusal to issue a visa so long as the officer provided a statutory citation justifying the action.  *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1162–63 (D.C. Cir. 1999).  Here, the consular officer cited an appropriate statutory basis for the refusal of Imanifouladi's visa application.  *See generally* Denial Form.

Plaintiffs insist, however, that they are not challenging the consular officer's refusal to issue the visa.  Instead, they argue, this case presents challenges to inaction on the waiver request, which is a separate process altogether.  *See* Pls.' Opp'n to Defs.' Mot. to Dismiss Pls.' Compl., and Mem. of P. & A. and Exs. in Supp. Thereof ("Opp'n") at 7–10, ECF No. 6.  Although the Proclamation bars the entry of Iranian nationals, it permits government officials to grant waivers in the case of undue hardship, when entry does not pose a national security or public safety threat, or when entry is in the national interest.  Proclamation § 3(c)(i).  Kangarloo properly applied for such a waiver on Imanifouladi's behalf, and it is *that* decision Plaintiffs seek to compel the government to undertake.  Opp'n at 8.

"The consular nonreviewability doctrine 'is not triggered until a consular officer has made a *decision* with respect to a particular visa application.'"  *Jafari v. Pompeo*, No. 1:19-cv-1819, 2020 WL 2112056, at *3 (D.D.C. May 3, 2020) (quoting *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016)).  Every judge in this District who has considered the same question has held that the consular nonreviewability doctrine does not apply to the waiver

6

process so long as the government has not made a final decision whether to grant or deny the waiver, even if the doctrine bars review of the original refusal under 8 U.S.C. § 1182(f). *See Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 114–15 (D.D.C. 2020); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 173–74 (D.D.C. 2020); *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 41 (D.D.C. 2020); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 92–93 (D.D.C. 2020); *Ghadami v. DHS*, No. 19-cv-00397, 2020 WL 1308376, at *4–5 (D.D.C. Mar. 19, 2020); *Jafari*, 2020 WL 2112056 at *3; *Sarlak v. Pompeo*, No. 20-35, 2020 WL 3082018, at *3–4 (D.D.C. Jun. 10, 2020). The Court agrees that the doctrine of consular nonreviewability does not bar challenges to the government's failure to issue a final decision on a waiver application under the Proclamation.[1]

## B. Mootness

The government next argues that Plaintiffs' claims are moot because Imanifouladi's visa has already been refused, so there's nothing left to decide. *See* Mot. at 9–10. The government spends very little effort on this argument, perhaps realizing that it is unlikely to succeed. *Id.*

"Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). "[A] case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.* (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)). If Plaintiffs had not applied for a waiver and were merely seeking to force the government to adjudicate the original visa application, which the consular officer has already refused, perhaps the case would be moot. But that's not what Plaintiffs seek, *see* Opp'n

---

[1] Because the Court holds that the consular nonreviewability doctrine does not apply here, it does not reach Kangarloo's argument that she has a constitutionally protected liberty interest in Imanifouladi's waiver application. *See* Opp'n at 11.

at 11–13, and the Court's decision will undoubtedly affect the Parties' rights moving forward. The case is not moot. *Accord Moghaddam*, 424 F. Supp. 3d at 112–13; *Didban*, 435 F. Supp. 3d at 174–75; *Thomas*, 438 F. Supp. 3d at 41–42; *Bagherian*, 442 F. Supp. 3d at 93; *Ghadami*, 2020 WL 1308376 at *5; *Jafari*, 2020 WL 2112056 at *5; *Sarlak*, 2020 WL 3082018 at *5 n.3.

### C. APA Claim

Count II alleges that the long delay since Kangarloo applied for the waiver violates the APA. Pet. ¶¶ 56–63. Under the statute, "[w]ith due regard for the convenience and necessity of the parties . . . and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). A "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). But the APA precludes judicial review of "agency action [that] is committed to agency discretion by law." *Id.* § 701(a)(2).

The government makes three arguments as to why it believes Plaintiffs fail to state an APA claim. First, it contends that the consular nonreviewability doctrine predates the APA and therefore precludes any APA review of actions that fall within its scope. *See* Mot. at 10–11 (citing *Saavedra Bruno*, 197 F.3d at 1158). That may be correct, but the doctrine is inapplicable here, and thus the government's argument is beside the point.

Second, the government argues that the waiver application process "is committed to agency discretion by law" and therefore not subject to APA review. Mot. at 11–12 (quoting 5 U.S.C. § 701(a)(2)). Because the availability of a waiver arises completely out of an executive action (the Proclamation) rather than statute, the government characterizes the entire waiver process as discretionary and therefore unreviewable. *Id.* at 11 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) ("[T]he APA does not expressly allow review of the President's actions."); *Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995) ("there is no private right of action to enforce obligations imposed on executive branch officials by executive orders"

(internal quotation omitted)).  And it points to text in the Proclamation explicitly disclaiming "any right or benefit, substantive or procedural" arising out of the action.  Proclamation § 9(c).

As Judge Lamberth noted in *Jafari*, the government makes a strong argument that the waiver process is unreviewable.  2020 WL 2112056 at *4.  "[T]here is no separate statute giving an applicant the right to a waiver or the right to have a waiver application adjudicated in a certain manner.  Instead, waivers are governed solely by the Proclamation." *Id.*  Congress delegated to the President the authority to impose such restrictions, 8 U.S.C. § 1182(f), and "the President was under no obligation to allow for waivers at all, as no separate statute or regulation requires waivers," *Jafari*, 2020 WL 2112056 at *4 (citing *Trump*, 138 S. Ct. at 2422–23).  To be sure, the Supreme Court cited the availability of waivers favorably when concluding that the Proclamation was a permissible use of the President's delegated authority under the INA.  *Trump*, 138 S. Ct. at 2422–23.  But Plaintiffs do not allege that the government has a policy or practice of failing to grant waivers altogether.  *See, e.g.*, *Sarlak*, 2020 WL 3082018 at *2 (noting that two of three plaintiffs received waivers in the course of litigation).  Plaintiffs merely allege that Imanifouladi's application has taken too long to process.  Pet. ¶ 63.

Because they can point to no statutory or regulatory obligation that requires the government to process waivers within a specific amount of time, Plaintiffs must point to some procedural right contained within the Proclamation itself.  "The Proclamation, however, makes it abundantly clear that it does not create 'any right or benefit, substantive or procedural' against the government." *Jafari*, 2020 WL 2112056 at *4 (quoting Proclamation § 9(c)).  The processing of waiver requests is therefore likely "committed to agency discretion" and unreviewable under the APA.  5 U.S.C. § 701(a)(2); *accord Jafari*, 2020 WL 2112056 at *4; *Joorabi v. Pompeo*, No. 1:20-cv-108, 2020 WL 2527209, at *5–6 (D.D.C. May 17, 2020).

The Court need not resolve that question, however, because the government's third argument resolves this case:  even if the process were reviewable, Plaintiffs have not plausibly alleged that the delay has been "unreasonabl[e]" under the APA.  5 U.S.C. § 706(1).  A number of other judges have assumed for the sake of argument that the delay is reviewable, but all who reached the question have concluded that that the delay was not unreasonable.  *See Didban*, 435 F. Supp. 3d at 175–76; *Bagherian*, 442 F. Supp. 3d at 93–96; *Ghadami*, 2020 WL 1308376 at *7–9; *Sarlak*, 2020 WL 3082018 at *4–7; *see also Moghaddam*, 424 F. Supp. 3d at 117 (declining to reach the question at the motion-to-dismiss stage); *Thomas*, 438 F. Supp. 3d at 44 (same).  So too here.

Those judges who have reached the question on motions to dismiss have applied the test articulated in *Telecommunications Research and Action Center v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984).  *See, e.g.*, *Didban*, 435 F. Supp. 3d at 175–76.  Plaintiffs argue that this analysis is premature at this stage because "[d]etermining whether defendants performed their duty within a reasonable amount of time . . . is a fact[-]intensive inquiry."  Opp'n at 22 (citing *Thomas*, 438 F. Supp. 3d at 42–43).  As in other cases, however, "this record contains enough facts to evaluate the *TRAC* factors now."  *Sarlak*, 2020 WL 3082018 at *5.  Under *TRAC*:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;"
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

>(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
>(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

750 F.2d at 80.

The first two factors weigh in the government's favor. Neither Congress nor the President set a timeframe for processing waiver applications, and Congress has traditionally "given the agencies wide discretion in the area of immigration processing." *Sarlak*, 2020 WL 3082018 at \*5 (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)). Imanifouladi has been waiting nearly two years, but that amount of time is in line with other decisions that have not found unreasonable delay. *See id.* at \*5–6 (collecting cases); *see also Yavari v. Pompeo*, No. 2:19-cv-02524, 2019 WL 6720995, at \*8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, or seven years are unreasonable, while those between three to five years are often not unreasonable.").

The government concedes that the third and fifth *TRAC* factors—Plaintiffs' health and welfare interests and the prejudice caused by the delay—weigh in Plaintiffs' favor. *See* Mot. at 15. Kangarloo and Imanifouladi have mostly been separated for the duration of their five-year marriage. Opp'n at 27. Travel between the United States and Iran was already difficult before the COVID-19 pandemic largely shut down international travel, and every day of delay in adjudicating the waiver application further exacerbates the harm to Plaintiffs. *Id.* The same considerations apply to Plaintiffs Alireza Kangarloo and Shahnaz Imani (Tara Kangarloo's parents), who live in Virginia and who remain separated from their son-in-law. *Id.* at 28.

11

The sixth factor, bad faith, plays no part in the Court's evaluation. Although "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," *TRAC*, 750 F.2d at 80, Plaintiffs here have not alleged bad faith.

That leaves the fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority." *Id.* According to the government, there are some 13,000 applicants in line for a waiver. *See* Mot. at 15. Each application requires extensive vetting and processing in the interest of national security. *Id.* at 4. Plaintiffs point to congressional testimony by administration officials averring that the government adopted new review techniques last year that drastically reduced processing time, *see* Opp'n at 25 (citing Testimony of Dep. Ass't Sec'y Edward Ramatowksi to H. Judiciary Comm. Subcomm. on Immigration & Citizenship and Foreign Affairs Comm. Subcomm. on Oversight & Investigations (Sep. 24, 2019) at 3, ECF No. 6-3), for the proposition that the application backlog is "a problem that is entirely of the administration's own creation," *Ghadami*, 2020 WL 1308376 at *8.

Nevertheless, Plaintiffs have not provided an adequate reason why the Court should compel the government to give Imanifouladi preferential treatment over other applicants simply because he filed a lawsuit. "Agency officials not working on [Imanifouladi's waiver application] presumably have not just been 'twiddl[ng] their thumbs.' Perhaps Congress should earmark more funds specifically to [waiver processing], but that is a problem for the political branches to work out." *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) (quoting *Bd. of Trade v. SEC*, 883 F.2d 525, 531 (7th Cir. 1989)). "[A] judicial order putting [Imanifouladi] at the head of the queue simply moves all others back one space and produces no net gain." *Id.* That "result would impermissibly interfere with the agency's 'unique' and 'authoritative [] position to view

its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Didban*, 435 F. Supp. 3d at 176 (quoting *In re Barr Labs., Inc.*, 930 F.2d at 76).

Having weighed the *TRAC* factors—assuming that such analysis is warranted—the Court concludes that Plaintiffs have failed to state a claim for unreasonable delay.

### D.     Mandamus Claim

Plaintiffs also petition for a writ of mandamus to compel the government to act. Pet. ¶¶ 49–55. The standard for undue delay under the Mandamus Act, however, is identical to the APA standard. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64 (2004). Because Plaintiffs' APA claim fails, mandamus is not available. *Didban*, 435 F. Supp. 3d at 177.

### IV.     Conclusion

The Court sympathizes with Plaintiffs, who have experienced a series of delays in their attempts to bring Imanifouladi to the United States. Unfortunately, there are several thousand other waiver applicants in similar circumstances, navigating a process that is largely entrusted to agency discretion and in which all applicants must compete for agencies' limited resources and attention. For those reasons, Plaintiffs have not stated a claim for unreasonable delay under either the APA or the Mandamus Act. The Court therefore grants Defendants' Motion to Dismiss. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: August 7, 2020

CARL J. NICHOLS
United States District Judge